FEB 21 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CONSULTING SERVICES, LLC,<br>Plaintiff,<br><br>v.<br><br>CONSUMER DIRECT OF AMERICA,<br>INC. /SHEARSON FINANCIAL<br>NETWORK, INC.,<br>Defendant. | :<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: 1:04-CV-1071-WBH<br>:<br>:<br>:<br>: |

### ORDER and JUDGMENT

On February 12, 2008, Defendant Shearson Financial Networks, Inc., consented to a default judgment as to liability with respect to both Plaintiff Consulting Services, LLC's, breach of contract claim and Defendant's unjust enrichment claim. Accordingly, that Defendant breached the December 18, 2003, Asset Acquisition Agreement (the "Agreement") and Plaintiff was not unjustly enriched are settled matters, and the only unresolved issue is the amount of damages to which Plaintiff is entitled.

On February 19, 2008, a hearing was held before the undersigned to determine damages. Having heard the testimony of the witnesses to the hearing and having reviewed the exhibits submitted by the parties, this Court now makes the following findings.

## Findings of Fact

1. <u>Shares of Stock</u>

Pursuant to the Agreement, Defendant was required to deliver to Plaintiff "Four Million Seven Hundred Sixty-Four Thousand Four Hundred Twenty Seven (4,764,427) shares of common stock of [Defendant] of which two million shares shall be freely trading . . . ." [Doc. 1, Exh. A at § 1.1]. Defendant was to deliver 3,764,427 of the shares – one million of which were "freely trading" – on December 18, 2003. The remaining one million freely trading shares were to be delivered thirty days thereafter.

It is undisputed that the share price on December 18, 2003, was $0.40, and that one million of the shares were, under the terms of the Agreement, to be freely trading — meaning that Plaintiff would have been able to sell those shares immediately. Defendant argues that under federal securities law, none of the shares could have been legally sold immediately. However, because the Agreement promises "freely trading shares," such shares are what Plaintiff was entitled to. Plaintiff is thus entitled to $400,000.00 in damages for the one million freely trading shares that were to be delivered on December 18, 2003.

It is further undisputed that the share price on January 20, 2004 — the first business day after the thirty-day period recited in the Agreement had elapsed — was

$0.30. Plaintiff is thus entitled to an additional $300,000.00 for the one million freely trading shares that were to be delivered thirty days after December 18, 2003.

As to the remaining 2,764,427 shares, this Court finds that the Agreement clearly states that Defendant had no obligation to deliver those shares as freely trading shares. According to Defendant, and undisputed by Plaintiff, pursuant to the version of 17 C.F.R. § 230.144(a)(3)(i) that was in effect in 2003 and 2004, the shares were restricted. Pursuant to 17 C.F.R. § 230.144(d)(1), the restricted shares had to be held for one year before they could be sold. It is undisputed that the share price on December 18, 2004 — after that one year had elapsed — was $0.23.

Additionally, this Court takes judicial notice of Defendant's Form 10-KSB for the fiscal year ended December 31, 2004, a public document available at http://www.secinfo.com/dsVS9.z7.htm#1stPage. Pursuant to the Form 10-KSB, this Court finds that on February 10, 2004, Defendant completed a reverse stock split in which shareholders received one new share for each twenty shares that they originally held. Accordingly, if as contemplated in the Agreement, Plaintiff had received 2,764,427 restricted shares on December 18, 2003, Plaintiff would have held 138,221 shares after February 10, 2004, the reverse stock split. On December 18, 2004, those shares would have been worth an aggregate $31,790.83, which is the amount of Plaintiff's damages with respect to the restricted shares.

AO 72A
(Rev.8/82)

In total, this Court finds that Plaintiff is entitled to $731,790.83 in damages for the shares of Defendant's stock that it should have received under the terms of the Agreement.

2. Assumption of Plaintiff's Debt

The Agreement also states that Defendant was to assume certain liabilities of Plaintiff, which liabilities were specifically set forth on Exhibit B to the Agreement. Those liabilities totaled $655,320.70.

Defendant asserted at the hearing that it paid off $2,882.00 of those liabilities, but the only evidence that Defendant presented in support of the assertion is Defendant's Exhibit 380 which purports to be a report of Defendants "Transactions by Account" dated December 31, 2004. According to Exhibit 380, on January 26, 2004, Defendant purportedly remitted check number 1207 in the amount of $2,882.00 to First American Flood Data Services. While a "First American Flood" appears as a creditor on Exhibit B to the Agreement, the amount set forth as Plaintiff's debt to First American Flood is $5,782.00. Moreover, no witness authenticated or otherwise testified regarding Defendant's Exhibit 380, and this Court has no evidentiary basis upon which to find that the $2,882.00 payment was actually made or that the payment was made to pay off a debt (or a portion of a debt) assumed under the Agreement

rather than for additional services. Conversely, a witness for Plaintiff testified that none of the debts listed on Exhibit B had been resolved.

In summary, this Court finds that Plaintiff is entitled to $655,320.70 in damages for Defendant's failure to assume the liabilities set forth in Exhibit B to the Agreement.

### 3. Prejudgment Interest

Under Georgia law, Plaintiff is entitled to prejudgment interest for damages recovered at a statutory annual rate of seven percent. With respect to the $400,000.00 in damages related to the one million freely trading shares due on December 18, 2003, (4.19 years ago) Plaintiff is entitled to $131,102.10 in interest.

With respect to the $300,000.00 in damages related to the second one million freely trading shares due on January 20, 2003, (4.08 years ago) Plaintiff is entitled to $95,373.05 in interest.

With respect to the $31,790.83 in damages related to the restricted shares that Plaintiff could not have sold until December 18, 2004, (3.19 years ago), Plaintiff is entitled to $7,658.18.

Finally, with respect to the $655,320.70 in liabilities that Defendant was supposed to assume on December 18, 2003, (4.19 years ago) Plaintiff is entitled to $214,784.80 in interest.

Attorneys' Fees and Expenses

Pursuant to § 5.3 of the Agreement,[1] Defendant is liable for Plaintiff's reasonable attorneys' fees and expenses of litigation. Having heard the testimony, this Court finds that the contingency fee agreement whereby Plaintiff owes its attorneys forty percent of any recovery is reasonable given the length and complexity of these proceedings, the attorneys fees common in this community, the fact that the attorneys have paid expenses on behalf of Plaintiff, the number of hours expended by the attorneys, and the fact that Plaintiff and his attorneys are in no way guaranteed to see any of the funds awarded today. The total damages award based upon the foregoing calculations is $1,836,029.66, and this Court finds that Plaintiff is entitled to recover forty percent of that figure – $734,411.86 – in attorneys fees under the Agreement.

---

[1] Section 5.3 of the Agreement states:

[Defendant] will hold [Plaintiff] harmless from and pay any loss, damage, cost or expense (including, without limitation, legal fees and court costs) which [Plaintiff] incurs . . . by reason of any breach by [Defendant] of any of its covenants or obligations under this Agreement.

Finally, Plaintiff's attorney testified at the hearing that the litigation expenses were $27,865.20, and Defendant did not dispute this testimony. This Court thus finds that Plaintiff is entitled to that amount in expenses.

### Conclusion

For the reasons set forth above, it is

**ORDERED AND ADJUDGED** that the Plaintiff recover of the Defendant the sum of Two Million, Five Hundred and Ninety-Eight Thousand, Three Hundred and Six, and 72/100 Dollars ($2,598,306.72), which sum includes $1,387,111.53 in damages, $448,918.13 in prejudgment interest, $734,411.86 in attorneys fees, and $27,865.20 in expenses.

**IT IS SO ORDERED,** this 21st day of February, 2008.

_____
WILLIS B. HUNT, JR.
UNITED STATES DISTRICT JUDGE